May it please the Court, my name is Todd Schleyer and I represent the appellants. I'm going to reserve three minutes for rebuttal. Whatever you have on the clock there, when you sit down, is yours. Thank you. Justice Holmes wrote that the first call of the theory of law is that it should fit the facts. In this case, the trial court failed to fit the facts into well-established district treatment law. This is an appeal of the trial court's grant of summary judgment on the grounds that the male plaintiffs failed to make the minimal showing to establish a prima facie case of gender discrimination as well as pretext. As the Court knows, the standard of review is de novo, and that requires the Court to conduct an independent review of the evidence in a light most favorable to the plaintiffs. The plaintiffs' burden in an employment case at the prima facie stage is minimal and does not even rise to the level of a preponderance of evidence pursuant to Aragon and Lamb v. University of Hawaii. Third, and most importantly, it should be noted that whether employees are similarly situated typically is a question of fact for the jury per the Beck case. In this case, the trial court correctly ruled that the pilots established the first three elements under McDonnell-Douglas for their gender discrimination case, but erred in ruling that the pilots and Ms. Robin McCrae, a flight attendant, were not similarly situated. I don't think... Well, your argument in your brief is clear as far as the district judge's view that they have to have the same supervisor. I understand that. What I'm having a problem with your case is whether they're similar. That is, there was objection from one group and no objection from the other group. Why are they similar when their reactions are entirely different? Your Honor, I... No complaint, no filing of a complaint, no discussion with the owner that this is a problem in one group, just the opposite in the other group. It seems to me that's the difficulty that you have to overcome. And, Your Honor, I think in response to your question, first of all, Morrow and Yeager have never been adopted by the Ninth Circuit. But most importantly, on our particular facts, the human resources director, Cynthia Brosman, she testified that the use of sexual language, sexual banter, sexual jokes in the workplace, that's absolutely inappropriate whether anybody is offended by it or not. And, therefore, whether anybody is offended or not, if a manager hears that or sees that, that's a terminal offense, whether there is a complaint or not. Secondly, in the particular facts of this case, we really need to look at the timing of Ms. McRae's complaint. It came just days after the facts training where she performed miserably, and two of the plaintiffs, Aldridge and Hahn, had critiqued her during that. Two days later, she files a complaint. Likewise, the evidence was clear at the trial court level, and the judge ignored it that Ms. McRae wanted to get out of the company. It was clear she hated her job and she was looking for a way out. And that came from three other ‑‑ two other stewardesses and a pilot. So I think ‑‑ I don't see how that impacts on trying to get the similarities of the two groups. Well, Your Honor, I guess the best way to answer that is the test in the Ninth Circuit is whether they are similarly situated in all material respects. And, yes, are they different in that one particular respect? Yes, they were. But I don't think that that makes them dissimilar in all material respects, considering that they engaged in virtually identical conduct here. And, secondly, and this goes to the second point that I wanted to raise where I think there is error, that the same supervisor issue I think is really irrelevant here. Jakirian, who was the supervisor of the pilots, and Jackson, who was the supervisor of flight attendants, they weren't even involved in the termination decision here. We have a common decision maker. I think as Judge Wallace said, we do understand that supervisor issue. I don't think you ought to waste your time on that. Explain to me why an employer is required to discipline all employees equally. I mean, let's say it is, as you allege, this was a place where a lot of people were engaging in this kind of conduct, and the employer looks at the situation and says, gee, if we fire everybody who engages in this, we're not going to have anybody working for us. So we're going to make an example of some people. And this is not the facts of this case, but let's just say, they say we're going to put all the names in a hat and draw out three names, and those are the people who are going to get fired as a terror to all others, because we don't want to fire everybody, but we do want to change an attitude. Nothing wrong with that, right? That's correct, especially since Arizona is an at-will state, Your Honor. I didn't hear what you said. Yes, that is correct, especially since Arizona is an at-will state. Right. I mean, I'm talking for Title VII purposes. I'm not trying to implicate any other body of case. So what you have to say in order to bridge the difference between that case and your case is that your clients were selected not randomly and not for any legitimate reason, but because of their sex. And what I understand, which I think is perhaps somewhat the same question Judge Wallace asked, is why can't the employer say, look, we realize that perhaps a lot of people are committing infractions, maybe we ought to fire everybody or discipline everybody, but, you know, we'd be without a workforce. And these guys had complaints against them. So what we're going to do is we're going to get rid of, you know, they are the ones that had the bad luck of drawing the short straw by having complaints against them. That created a problem for us. We need to, you know, show we're tough on this kind of issue now that we've been apprised that this is going on. And the way we're going to be tough about it is we're going to pick the three guys against whom there were complaints and fire them. And we then hope that everybody else in the workforce will take a lesson from that and that will clean up their speech and, you know, correct the problem. Why isn't that the fair inference from this record? I don't think it is the fair inference because the CEO who made the final decision in all cases wanted to know whether the employee was in a protected category. And in this case, it's very, very clear that Ms. McRae was female. And I think the inference that a jury could find is that since he considered in this case and in every case protected categories and in this case did not terminate Ms. McRae, I believe that that certainly gives. Let me change the question a little bit then to deal with that. And I don't know what the answer is. I'm not baiting you. I'm truly asking a question. So let's say he says, look, we've got to do something. Now that this problem has been brought to our attention, we've got to do something. And the best way to deal with it is to have very harsh discipline against some employees. And, you know, one of the things we take into account is what is going to be the difficulty of firing people and the cost to the company. And, you know, it's harder, you might say, to fire employees who are protected by minority status. Just, you know, it's a reality because they are more likely to invoke Title VII protections. So we're going to pick the low-hanging fruit. We're going to pick the guys to fire who are least likely to be able to complain of discrimination. Is that discrimination? Yes, it is, Your Honor. And I think the Smith v. Waste Management case, which we cite in our brief, that was a case in which exactly that happened. African-Americans who engaged in similar conduct were not terminated because the company was concerned that they might bring a lawsuit against them. And the appellate court in that, I'm sorry, the district court in that case, basically held that that is evidence of discrimination and of a corporate culture. In our particular case, we have the same situation. If the male pilots had been the ones that had brought their complaint, is there any question in the court's mind that McRae would have been fired since she was in a protected category and that she was a female? And if the answer to that question is no, then that is basically sex discrimination. And I think based upon the facts that we have in this case, which are undisputed, that Mr. Pott did consider. But we really do have to speculate about the answer to your question. What you're saying is we have to infer or assume that had Shubin and another foot, had they complained, I forget, one of the plaintiffs was involved in an alleged fanny-patting incident, right? Yes. And let's say he had gone and complained about her doing that. You want us to assume that the company would have said, too bad, we're not going to fire her. I think in light of the fact that they do a risk assessment analysis in every case, he wants to know whether they're protected in the protected category. It's a little hard for employers to navigate all of these concerns. At the end of the day, they do. At the end of the day, they don't. I agree with you. Being an employer in this day and age with these laws, it's tough. But the bottom line is that the law is the law. Title VII has been the law now for almost 30 years, and an employer is required to comply with it, as difficult as it might be. You've got 3 minutes and 40 seconds. Questions you may wish to ask. On the similarly situated, which seems to me is the real issue that's placed before us by the record in the district court, the position that's being taken against you is that they're not similarly situated because it was not unwelcome conduct. They are different responses, different people. Now, the Seventh Circuit and the Eighth Circuit have had cases which indicate that no complaints does make a difference. What do we do with that seemingly, perhaps not directly on point, but other circuits that have indicated at least that no complaints may indicate that they're not similarly situated? It's certainly a factor, Your Honor. And I don't deny that in the right case it can be a factor. It's one of very, very many factors to be considered. But in this particular case, because we have the human resources director saying you engage in the conduct, it's a terminal offense, end of story, you do the crime, you do the time, that in this particular case and in light of the timing of the complaints, that's an issue that a jury should decide pursuant to the Beck case because it's an issue of fact, and they should be considering that in the totality of circumstances as far as whether they're similarly situated. And I see my time is just about up, so I will sit down. Okay. You reserve the rest of your time for rebuttal. We'll now hear from the defendant. Or defendant, rather. Good morning, Your Honors. May it please the Court. I'm Celeste Wasilewski, Counsel for Defendant Applee Executive Jet Management, Inc. We should give you advice. Acoustics are just terrible in this room, and you have to really raise your voice. Certainly. Thank you, Your Honor. Thank you. Or talk right into that mic. Okay. Plaintiffs have brought this appeal. Is that better? That's terrific. Thank you. Challenging the district court's grant of summary judgment in Executive Jet's favor on four different grounds. We submit that none of the grounds for appeal have merit, and we respectfully request the lower court's decision to be affirmed in its entirety. First, plaintiffs claim that the district court erred by requiring them to show as the fourth prong of their prima facie case that similarly situated employees were treated more favorably by Executive Jet Management. They contend that this showing is too restrictive, and instead the lower court should have considered whether the record as a whole included sufficient evidence to give rise to an inference of discrimination. May I ask a question on this? Ordinarily, isn't it a question for the jury whether or not the comparator, to use that term, is similarly situated or not? Isn't that a jury question normally? Not necessarily in all cases, Your Honor. In the lower court decision of Hargrove v. Federal Express Corporation, which the district court decided or cited in its decision, and in another case that we recently found in response to a recent citation, a supplemental citation by plaintiffs, Courtney v. Oregon Department of State Police, 2008, U.S. District, Lexus 53282, both cases involved a question of whether there were similarly situated employees based on the supervisory issue. Both cases were rulings on summary judgment, and both cases were affirmed by the Ninth Circuit. Were those published decisions? The lower court decisions are published. They were affirmed in unpublished decisions. I looked. I couldn't find a single Ninth Circuit published decision that expressly says same supervisor is a requirement. Am I right about that? I have not located a recent published decision on that supervisory issue other than Vasquez. Vasquez doesn't say that. I don't recall whether that was a summary judgment case. But I would submit that the Ninth Circuit, particularly in Hargrove, specifically addressed the similarly situated issue, and I would submit that if this was a question for the jury, the Ninth Circuit would have sent it. But that was unpublished, wasn't it? That was not a published decision. You're correct, Your Honor. All right. Now, on the other issue about whether there has to be an objection or a complaint, I couldn't find a single Ninth Circuit decision that says that's a requirement either. I haven't found one either. There is persuasive authority from the Seventh, Eighth, and Tenth Circuits that we discuss in our brief and in our motion to the lower court. And we submit that in order to be similarly situated in this case, it's still the law, at least in the Ninth Circuit, that the employees have to have the same supervisor. That was in the Hargrove case. That was in the court instance. That's just a district court decision. Correct. And they were affirmed in unpublished decisions. So that doesn't count for authority. That's just like a district judge. That's just if it's persuasive or not. Correct. Maybe it is, maybe it's not. But it's not binding authority. But we submit to be similarly situated. Aside from the supervisory issue, you have to be similarly situated in all material respects. And the reason why the female employees weren't similarly situated in all material respects was there was no complaint of their conduct made to the company. And this is significant. You know, as with many issues in the law, it all depends on the level of generality at which you make the comparison. And you want to make the comparison at the level of generality of, you know, was there a complaint or not a complaint. Your opposing counsel says, no, what you need to look at is conduct and not whether there were complaints. There are lots of reasons why people might not make complaints. They might not make complaints even though they find the conduct abusive because they don't want to make trouble, because they don't want to cause trouble for their, you know, co-workers, who they generally like but, you know, they still find, you know, acting offensively. They don't want to make trouble for themselves. They may not know their rights. They may not know that this is something they can complain about. So whether somebody complains or doesn't complain, it just doesn't strike me as, you know, the right level of generality. If the conduct really is prohibited, I mean, let's say you had a rule, and this is, I think, what your co-counsel or opposing counsel rather must say, you know, you have a general rule, and it turns out the company only enforces against, you know, black employees. Let me just give a sort of clear-cut example. It wouldn't really matter whether there were complaints or not complaints, would there? I mean, there was sort of a long pattern that any time the rule was enforced, it was only, you know, Asian employees, you know, just, you know, something like that. The employer has to be aware of the behavior in order to enforce the rules, and in this case they're... Well, the employer is aware of the behavior now. There was a report saying everybody is party mouse in this job, including the complainant, and there's a sort of culture of people making this kind of humor. Men do it. Women do it. Lots of... There's no record evidence that other than what was recorded and reported in the Sterling report about Robin McRae's behavior, there's no evidence that the employer is aware of any other conduct by any other employee in this case. And, in fact, they testified... The president and the HR director, when asked about other behavior, weren't aware of any behavior other than that that's set forth in the Sterling report, and as the district judge properly found, there's no evidence in that report of other females or non-Caucasians or non-American employees other than the allegations that plaintiffs made against Robin McRae. And I think it's important that employers know about conduct, have to be aware of it, in order to enforce the rules. And that's one of the... That's the second reason why these employees, the female employees, are not similarly situated. If you don't know about the conduct, you don't know to conduct an investigation. And we submit here... How does the employer know about the conduct? I think your client is incorporeal, right? I'm sorry? This is not a person. Your client is not a natural person. It's a corporation. It's a corporation. Correct, Your Honor. So corporations don't have eyes and ears and a brain and all those things, right? So we have something from the chief pilot, the letter that says, look, everybody talks this way, everybody acts this way. If you're going to fire these three guys, you need to fire everybody. Why isn't that the employer knowing? If somebody at that high level of supervision, in fact, knows this, why isn't that tantamount to the employer knowing it? Well, I don't... The chief pilot isn't very high up the hierarchy. You know, to me it sounds pretty high up. He's one step above the pilots. And then it goes up from the chief pilot to the director of operations to the vice president of flight operations. You know, that's the hierarchy. No, no. I understand that there may be people higher, but why isn't that high enough? He sent that letter. No, no. Let's talk about whether he's high enough. He, Michael Chikarian sent that letter, allegedly sent the letter to the vice president after the terminations. And there's no record evidence as to what the company did with that, whether that was brought to the president's attention or not. I'm asking a different question. He, in the letter, disclosed that he, as chief pilot, is aware of this other conduct. He didn't do anything about it. If there was horseplay going on at the Phoenix facility... Let me finish my question. Oh, I'm sorry. You will actually hear what I want to, what I'm asking about. He disclosed that he is aware of this conduct. He is the chief pilot. Why isn't his knowledge attributable to the employer? He is a supervisor. That's correct. Why isn't his knowledge? The fact that he says, I am aware of this conduct. Not that he brings it to the attention of higher management, but his very knowledge.  Well, since he is a member of management, typically his knowledge would be imputed to the employer. Right. You're repeating my question. So now what's my answer? You know, I'm struggling with that one. I think it's because of the level of management he was at and the fact that he did not take action and report that. First of all, he didn't take any action on his own. He doesn't take action. He's condoning. He's condoning the behavior at his facility. Now, that's not to say if that had been reported up to Cincinnati, to the operational headquarters, that senior management would have taken the same position. Well, where we started this conversation is with you saying there is no evidence that management was aware that there were all these people violating the rule. And nothing was done about it. And my question was, well, the chief pilot, who is pretty high up, high enough, who you yourself said his knowledge would be attributed to management. He says he knew, and he says no action was taken. So we have to take that as a fact. We have to take that as an established fact. So why isn't the fact that the chief pilot knows about this behavior, which is attributed to lots and lots of employees, they don't do anything about it, and they pick on these guys. Why isn't that proof of discrimination right there, which we then say it's an issue of fact. We have to send it back to them. Well, the chief pilot wasn't discriminating because he was treating everyone the same. But I'm struggling to make the connection between the knowledge of the chief pilot, which I personally know is very low in the hierarchy level, and the way these types of companies operate, that information, it never made it to Cincinnati, to senior management, to HR, where the people who are responsible. He admitted himself he can't discipline people. He doesn't have the authority to discipline. So that information needed to be relayed to people who have the authority to discipline. And then they would have had to have made a conscious decision, we're not going to conduct an investigation. Or if they did conduct an investigation, it would have had to have revealed inappropriate conduct. So I don't know the law in this area as well as you do, obviously. So is the ability to discipline a hallmark of being part of management for the purpose of attributing the knowledge to the employer? I believe so, Your Honor. He could propose discipline, right? He had a duty. He should have at least put the company on alert. This is going on down here. Let's say, I mean, he's the chief pilot, and as part of his job, he notices that one of the pilots failed to go through a safety check before flight. You know, which, if you know anything about aviation. He needed to grab that pilot right then and there. Okay, so we're on the same page. I mean, you say he can't discipline him, but he would have a responsibility to notify management and say, stop this guy from flying right now until this matter is straightened out, right? Correct. He could do that. He should do that. He should do that. It's incumbent on him to do that. Why isn't that the same true when he sees employees doing this other stuff, which is illegal? I don't know what compelled him to look the other way. He did. He did not bring this conduct to senior management's attention. In fact, in the Sterling report, in the interview of Giovanni Tanti, the former lead pilot, he told Sterling, I was told to talk to Aldridge about his behavior, to stop making stupid remarks. I was told to talk to Hahn about pinching the flight attendant's rear end and to stop it and knock the stuff off. And Chikarian told me not to put anything in writing. Tanti is Chikarian's predecessor, right? No, Tanti was the lead pilot, who is one step, he's in between the chief pilot and the pilots. And then Aldridge moved into Tanti's position when Tanti left the company. I see. Okay. Thank you, Your Honor. May I ask, to go back to something you said earlier, this Sterling report, doesn't it reveal to the decision-maker that Mrs. McRae was engaged in similarly offensive conduct? There were allegations in there by plaintiffs that she engaged in similar behavior. The President read the report and determined that she was more credible than not. All right. So possibly a reasonable jury could find that the President really did not make that, that that was a pretext, that the evidence before the President was sufficient to find that everyone was engaged in illegal conduct and that they all should have been fired. No, there was only the allegations about McRae. And as the district court ruled, whether, you know, the President had to make credibility determinations. If you read that report, there's a lot of he says, she says, there are things that are denied, things that maybe are not corroborated, there are things that are. And the district court properly ruled that the issue of McRae's credibility is not relevant to this case. In looking at pretext, what was relevant was for plaintiffs to show by either direct evidence or specific and substantial indirect evidence that EJM's reason was not true. I want to take you back 30 years. Let's say you were in the deep south and the President of the company said, I believe the white guy. I don't believe the black guy. And then you go to the court and the district judge says, well, I guess I have to go with the white guy. The district judge is finding for the white guy he must have been in good faith. Now, you know that can't be the law. That can't be. What was required at the pretext stage, which is where the credibility determination came in, was not, you know, the President's assessment of credibility. At the pretext stage, plaintiffs had to show that the reason given for their terminations, which was inappropriate conduct, was not true, that it was actually pretext for unlawful discrimination. And the judge ruled that, you know, McRae's credibility has no bearing on this issue. Plaintiffs did not prove that the reason given for their termination, that they engaged in inappropriate conduct, was pretext for unlawful discrimination. I've been focusing on the similar situated issue. And I must confess that I think that the district judge was wrong in requiring supervisors. This is in General Moses, a very small company. POD did all of the decision-making. If there's a supervisor, he is the supervisor. And he did all the firing. So I'm just off the bat. I don't care much for that. But the district judge has another issue involved, that they're similarly situated because they did not complain. And I thought that was a pretty good argument of why that was until I read our recent case with Nicholson, Judge Pregerson's opinion, and you're probably familiar with that, which seems to tilt it back the other way in that it's a factual issue and it's going to have to go to trial. I'd like to have your response, how you would defend the position of the district court, that they're not similarly situated because of complaints in light of the Nicholson case. What the plaintiffs would have to show is that they were similarly situated in all material respects. And we submit here that to be similarly situated in all material respects, there had to have been a complaint of inappropriate behavior brought to management's attention. There had to have been an investigation into that complaint or into the allegations of inappropriate behavior. That investigation had to have resulted in a finding that there was indeed inappropriate conduct. But because it finds that the allegations have no merit, then they're not similarly situated. And then once there's a finding of inappropriate conduct, there has to be a decision by the company not to take action against the employees. And at that point, the employees become similarly situated to plaintiffs. So it's not simply, you know, there has to be the complaint, which triggers the investigation, and then there has to be a finding of inappropriate conduct, and then no action by the company against those employees for them to be similarly situated. May I just take a few minutes, a moment to wrap up? I'm way out of time. I think you are over your time. I think we do understand. You are way over your time, and we do understand your position. But don't be concerned. You're answering our questions. We've read all the briefs and the record, as you might guess. Thank you. You've been very thorough in your answers, and that's helpful. Your Honor, I'll have nothing further to follow. Okay. Thank you. The case just argued will stand submitted.
judges: Alsup, Kozinski, Wallace